```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| SELECTIVE WAY INSURANCE COMPANY, *A/S/O J.E. BERKOWITZ*,<br><br>        Plaintiff,<br><br>    v.<br><br>GLASSTECH, INC., et al.,<br><br>        Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 14-3457 (JBS/KMW)<br><br>**OPINION** |

APPEARANCES:

Steven A. Kluxen
ZIRULNIK, SHERLOCK & DEMILLE
1395 Yardville-Hamilton Square Road
Suite 202
Hamilton, N.J. 08691
    Attorney for Plaintiff

William C. Mead, Jr.
LITCHFIELD CAVO LLP
1800 Chapel Avenue West
Suite 360
Cherry Hill, N.J. 08002
    Attorney for Defendant

**SIMANDLE, Chief Judge:**

**I.    INTRODUCTION**

    The matter comes before the Court on Defendant Glasstech, Inc.'s (hereinafter, "Defendant") motion to transfer this action to the Northern District of Ohio or, alternatively, to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  [Docket Item 4.]

Plaintiff Selective Way Insurance Company (hereinafter, "Plaintiff") asserts, as subrogee of J.E. Berkowitz (hereinafter, "Berkowitz"), that Defendant's negligent "troubleshooting" of Berkowitz's glass annealing oven caused an explosion, resulting in the substantial destruction of Berkowitz's property in New Jersey.  Defendant, relying upon the provisions of its General Terms and Conditions of Sale (hereinafter, the "General Terms" or the "Terms"), moves to transfer this action to the Northern District of Ohio or, alternatively, to dismiss this action as barred by the eighteen (18) month limitations period prescribed by its General Terms.  Plaintiff does not dispute that Defendant performed certain repair services in accordance with a service Quote provided to Berkowitz by Defendant.  Nor does Plaintiff challenge that the service Quote expressly stated that Defendant provided such services pursuant to the General Terms.  Rather, Plaintiff disputes whether Berkowitz ever received the General Terms appended to Defendant's motion, particularly because Plaintiff's Complaint—which sounds in tort and contract—makes no reference to any contractual agreement executed by the parties.  Moreover, because conduct in New Jersey forms the predicate of this action, Plaintiff contends that the circumstances fail to support the transfer or dismissal of this action.

The principal issues now before the Court are the effect, if any, of Defendant's General Terms on the viability of this litigation, and whether, even if inapplicable, the circumstances of this action dictate transfer to the Northern District of Ohio. For the reasons explained below, the Court will deny Defendant's motion to transfer this action and alternatively to dismiss without prejudice to refiling upon completion of pretrial factual discovery.

## II. BACKGROUND

### A. Factual Background

The facts set forth below are those alleged in Plaintiff's Complaint, which the Court accepts as true for the purposes of the pending motion. On September 11, 2012, Berkowitz engaged Defendant in order to "troubleshoot[]" Berkowitz's glass annealing oven. (Compl. [Docket Item 1], ¶ 4.) During the course of Defendant's repair work, the glass annealing oven exploded, causing Berkowitz's facility to be "substantially damaged or destroyed by fire." (Id. at ¶ 3.) Plaintiff alleges that the explosion resulted from the "unknown" and reckless actions of Defendant's employee. Plaintiff therefore seeks monetary damages for Defendant's alleged negligence and for Defendant's purported breach of express and implied warranties. (See generally id.)

Plaintiff, Berkowitz's insurance carrier, reimbursed Berkowitz for the total loss allegedly derived from Defendant's negligence, and, accordingly, brings this action as Berkowitz's subrogee in order to recover such sums.[1]

**B. Parties' Arguments**

Defendant generally argues that, in filing this action, Plaintiff ignores the Agreement "[c]entral" to the services Defendant's employee provided at the time of the incident. (Def.'s Br. at 2.)  Indeed, Defendant correctly notes that Plaintiff's Complaint contains no express reference to any contractual arrangement, nor provides any additional information concerning the circumstances giving rise to this litigation. (See generally Compl.)  Despite these omissions, however, Defendant asserts that the General Terms mandate the transfer of this action to the Northern District of Ohio in accordance with the forum selection provision or, alternatively, require this action be dismissed as untimely under the contractual eighteen (18) month limitations period.  (Id. at 3.)  Indeed, Defendant asserts that "no exceptional circumstances" permit Plaintiff "to flout the parties' bargained for" forum, and further contend that the mere filing of this action contravenes the parties'

---

[1] Defendant removed this action from the Superior Court of New Jersey on May 30, 2013.  (See Notice of Removal [Docket Item 1].)  The pending motion followed shortly thereafter.  [Docket Item 4.]  The Court has subject matter jurisdiction due to diversity of citizenship, 28 U.S.C. § 1332.

contractual expression. (Id. at 7; Def.'s Reply at 5.) In seeking to transfer this action, Defendant argues that the "agreed to" forum selection provisions obviates the need to credit Plaintiff's choice of forum (which Plaintiff purportedly waived freely), and to evaluate the private interest factors typically associated with 28 U.S.C. § 1404(a). (Def.'s Br. at 4-5.) Rather, Defendant asserts that the relevant public interest factors overwhelmingly support transfer of this action to Ohio, particularly in light of the clear "dictates" of the parties' non-adhesive and bargained-for Agreement, the alleged disparity in congestion between this Court and the Northern District of Ohio, and because Ohio law purportedly governs any dispute arising out of the parties' Agreement. (Def.'s Br. at 8; Def.'s Reply at 8.) In the alternative, Defendant urges the Court to dismiss this action as untimely under the eighteen (18) month limitations period of the General Terms. In support of its position, Defendant similarly asserts that the Terms reflect an express agreement to shorten the applicable limitations period, and further argues that no policy considerations support overriding this allegedly "clear and reasonable" contractual expression. (Def.'s Br. at 7-10; Def.'s Reply at 12-14.)

Plaintiff counters in opposition that Defendant's argument in support of the transfer or dismissal of this action hinges upon a document (here, the General Terms) that Berkowitz neither

received nor executed. Rather, Plaintiff acknowledges only receipt of the service "quotation[,]" but characterizes the record as "devoid of any proofs" that Berkowitz "ever received and/or agreed to" Defendant's General Terms. (Pl.'s Opp'n at 1-2, 6.) Plaintiff therefore contends that the General Terms do not circumscribe the timeliness of, or required venue for, this litigation, particularly given the Terms' purportedly adhesive nature. (Id. at 3-5.) Rather, Plaintiff asserts that venue properly lies in New Jersey: the location of the damaged Berkowitz property and the events that give rise to this litigation, and the state in which the majority of the witnesses reside.[2] (Id. at 6.)

### III. STANDARD OF REVIEW

Dismissal under Federal Rule of Civil Procedure 12(b)(6) constitutes a permissible means of disposing of an improperly venued action, or "of enforcing a forum selection clause that allows suit to be filed in another federal forum." Salovaara v. Jackson Nat. Life Ins. Co., 246 F.3d 289, 298–99 (3d Cir. 2001). However, it is axiomatic that the Court may not, in resolving a

---

[2] Plaintiff additionally argues that Defendant primarily predicates its motion upon documents extraneous to, and not relied upon in, Plaintiff's Complaint. (Id. at 2-6.) Plaintiff therefore disputes whether the General Terms may be considered in connection with the pending motion, and asserts that Defendant's position in support of its request to transfer or dismiss this action constitutes an improper "attempt to transform this motion [into] one of summary judgment[.]" (Id. at 4-5.) The Court rejects this argument for the reasons stated below.

motion to dismiss under Rule 12(b), consider "matters extraneous to the pleadings." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). Rather, the Court may only consider a "'document integral to or explicitly relied upon in the complaint,'" or an "'undisputedly authentic document'" if such document forms the predicate for the complaint. In re Rockefeller Ctr. Props., Inc., Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999) (citations and emphases omitted). Whether Plaintiff's Complaint sufficiently "relies upon" the service Quote and General Terms must therefore be addressed first.

**IV. DISCUSSION**

  **A. Plaintiff's Complaint Implicitly Relies Upon the service Quote and General Terms**

Plaintiff's challenge to the Court's consideration of the service Quote and General Terms manifests in two (2) forms: first, Plaintiff argues that Berkowitz never received nor agreed to the General Terms in connection with Berkowitz's retention of Defendant; and second, Plaintiff asserts that the absence of any reference to such Terms in the Complaint precludes the Court from considering the purportedly "extraneous document" in connection with the pending Rule 12 motion. (Pl.'s Opp'n at 2-3, 5-6, 8.) Defendant, however, challenges these assertions on three (3) bases: first, Defendant asserts that limitations of a Rule 12(b)(6) inquiry do not restrict the Court's analysis of this request to transfer under 28 U.S.C. § 1404(a); second, and

alternatively, Defendant asserts that the General Terms may properly be considered in the context of a Rule 12(b)(6) inquiry, because Plaintiff does not dispute the authenticity of Defendant's service Quote; and lastly, Defendant asserts that the service Quote and General Terms constitute the critical predicate for Plaintiff's Complaint, particularly to the extent Plaintiff "asserts a claim for express warranties." (Def.'s Reply at 2-4, 10 (emphasis in original).)

At the outset, the Court notes that failing to attach or explicitly cite to an extrinsic document does not, as argued by Plaintiff, preclude the Court from looking at the texts of the documents on which Plaintiff bases its claims. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). Indeed, binding Third Circuit precedent clearly states an exception to the general preclusion against consideration of matters extraneous to the pleadings for indisputably authentic documents and/or "'documents integral to or explicitly relied upon in the complaint.'" Mele v. Fed. Reserve Bank of N.Y., 359 F.3d 251, 256 n.5 (3d Cir. 2004) (citing In re Burlington, 114 F.3d at 1426). Moreover, the rule specifically endeavors to avoid the result of a "legally deficient claim" surviving a motion to dismiss solely as a result of the plaintiff's failure to attach a dispositive document on which the plaintiff bases its request for relief.

<u>Lum v. Bank of Am.</u>, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citing <u>Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993)).

Here, given the allegations of Plaintiff's Complaint, the Court finds reliance on the service Quote and General Terms, which Defendant appended to its motion, appropriate. Plaintiff, in essence, concedes the existence of "some" agreement between the parties, but refutes any claim that such agreement manifested in any particular form and/or incorporated any conditions relevant to this litigation. (<u>See, e.g.</u>, Pl.'s Opp'n at 1 ("While it is agreed that some type of agreement was entered into between Berkowitz and Glasstech, Inc., the particulars of that agreement have yet to be established.").) However, the applicable agreement in this instance—the service Quote provided by Defendant to Berkowitz and its incorporated terms—forms in part the heart of Plaintiff's Complaint, particularly to the extent that Plaintiff asserts that Defendant's conduct breached <u>express</u> warranties. (<u>See</u> Compl. at ¶ 2.) In that regard, Plaintiff's Complaint is clearly founded upon an actual agreement for services. (<u>See</u> <u>id.</u>) <u>See</u> <u>also</u> <u>Michael v. Shiley, Inc.</u>, 46 F.3d 1316, 1325 (3d Cir. 1995) (noting that a contract generally defines the substantive obligations of any express warranties); <u>Dzielak v. Whirlpool Corp.</u>, ___ F. Supp. 2d ___, No. 12-089, 2014 WL 2758746, at *9

(D.N.J. June 16, 2014) (noting that "'an express warranty is a term of [a] contract itself'"). Moreover, as asserted by Defendant, Plaintiff does not dispute the authenticity of the service Quote appended to Defendant's submission, and counsel indeed concedes that Berkowitz "received" and "agreed" to such Quote. (Pl.'s Opp'n at 2.) In taking such a position, Plaintiff necessarily recognizes the service Quote's explicit incorporation of "THE TERMS AND CONDITIONS STATED IN [DEFENDANT'S] GENERAL TERMS AND CONDITIONS OF SALE." (Mead Certif., Ex. A.) Further, having implicitly relied upon the service Quote in its Complaint, Plaintiff cannot now claim any inequity in the Court's consideration of same. See Lum 361 F.3d at 222 (noting that, "by relying on [a] document, the plaintiff is on notice that the document will be considered" in connection with a motion under Rule 12(b)(6)) (citation omitted).

Consequently, though, as stated below, the status of the record in this action presently precludes enforcement of the General Terms, the Court finds that the service Quote and the General Terms, as appended to Defendant's submissions, may properly be considered in deciding Defendant's motion to dismiss.

### B. Enforcement of the Forum Selection Clause Would At This Time be Premature

Though forum selection clauses have not been historically favored by American courts, the Supreme Court in M/S Bremen v.

Zapata OffShore Co., 407 U.S. 1, 10 (1972) held such clauses to be presumptively valid and enforceable absent a showing by the resisting party that enforcement of the clause would be unreasonable under the circumstances.  See also Wall St. Aubrey Golf, LLC v. Aubrey, 189 F. App'x 82, 85 (3d Cir. 2006) (citations omitted) ("Forum selection clauses are entitled to great weight and are presumptively valid.").  Consequently, in order to avoid the application of a valid forum selection clause, the resisting party must establish "(1) that it is the result of fraud or overreaching, (2) that enforcement would violate strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in a jurisdiction so seriously inconvenient as to be unreasonable."  Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 202 (3d Cir. 1983); see also Moneygram Payment Sys. v. Consorcio Oriental, S.A., 65 F. App'x 844, 846 (3d Cir. 2003) (same).

   Given the early procedural posture of this litigation, the Court lacks the requisite predicate (whether through uncontroverted averments or indisputably authentic documents) upon which to engage in an informed inquiry concerning the existence of a valid forum selection clause and/or the effect of such clause.  Defendant insists that the General Terms appended to their pending motion constitutes a critical component of the

service agreement entered into by the parties. (See generally Def.'s Br; Def.'s Reply.) Plaintiff, by contrast, takes the position that no such agreement governs the parties' relationship. (See generally Pl.'s Opp'n.) The relevant record before the Court at this stage, however, does not unequivocally support either position.

Notably, it is undisputed that the service Quote incorporated some set of "General Terms and Conditions of Sale[.]" (Mead Certif., Ex. A.) Even if Berkowitz never received a copy of the General Terms, such express incorporation communicates the existence of additional provisions, and should have placed Berkowitz on notice of the need to engage in further investigation concerning the nature of the parties' agreement. However, no such investigation occurred. Rather, it would appear that Berkowitz accepted Defendant's service Quote shortly after its initial receipt. (Walbolt Certif., Ex. A.) In so accepting, and while maintaining that Berkowitz never received nor assented to the General Terms, Plaintiff argues that the "unsigned," non-negotiated, "and generic boilerplate" conditions constitute an unenforceable contract of adhesion. (Pl.'s Opp'n at 4-5.) However, presentment on a "take-it-or-leave-it" or adhesive basis does not, without more, render the General Terms (or specifically, the forum selection provision) unenforceable. Bonanno v. Quiznos Master LLC, No. 06-1415, 2006 WL 3359673, at

*5 (D.N.J. Nov. 16, 2006) (citing <u>Alexander v. Anthony Int'l, L.P.</u>, 341 F.3d 256, 265 (3d Cir. 2003)); <u>see</u> <u>Union Steel Am. Co. v. M/V Sanko Spruce</u>, 14 F. Supp. 2d 682, 686 (D.N.J. 1998) ("[Plaintiff] argues that there is no presumption of validity because the forum selection clause at issue is part of an adhesion contract. This argument has been rejected by courts which have considered it."). Nor does a party's failure to review a <u>received</u> forum selection clause necessarily preclude enforcement. Rather, the "critical inquiry" concerns whether the agreement "reasonably communicated" the provision, not whether the party actually read or negotiated the terms of such provision. <u>Jordan Acquisition Grp., LLC v. Adam Techs., Inc.</u>, No. 09-542, 2009 WL 2473987, at *6 (W.D. Pa. Aug. 12, 2009) (citing <u>Marek v. Marpan II, Inc.</u>, 817 F.2d 242 (3d Cir. 1987). Here, however, the dearth of the present record leaves unanswered several critical questions.

The record, for example, fails to squarely reflect whether and to what extent Berkowitz agreed to be bound by the General Terms, thereby casting doubt upon the Terms' validity. <u>See</u> <u>Jumara</u>, 55 F.3d at 880 (noting that a <u>valid</u> forum selection clause generally endeavors to reflect the "manifestation of the parties' preferences as to a convenient forum"). Moreover, it is undisputed that Berkowitz never executed or otherwise expressly acknowledged receipt of the General Terms. Indeed,

the factual circumstances surrounding the parties' service agreement—facts necessary to properly inform the Court's analysis—are entirely undeveloped in the present record. The bare record presently before the Court therefore fails to suffice. Proceeding with pretrial factual discovery, however, will enable the parties to develop the answers to these and related inquiries, and to provide a more ample predicate from which to conduct the required inquiry.

Because the existence of the General Terms is in legitimate dispute, the Court finds the present record insufficient to perform the robust review required to determine whether, if at all, the General Terms circumscribe the procedural context of this litigation. The Court will therefore deny Defendant's motion to transfer or dismiss this action pursuant to the provisions of the General Terms, without prejudice to Defendant's right to renew its position upon conclusion of pretrial factual discovery.[3] Roman v. Unigroup Worldwide, No. 13-1748, 2014 WL 2504586, *9-*10 (W.D. Pa. May 28, 2014) (finding that the court could not, at an "early stage of litigation," resolve the issue of the existence and effect of

---

[3] Because enforcement of the forum selection clause hinges upon the enforceability of the General Terms as a whole, the Court need not engage in any protracted inquiry concerning Defendant's request to dismiss this action as untimely under the limitations provision of the General Terms. Rather, the Court similarly denies Defendant's request without prejudice for the reasons stated above.

a forum selection clause, and denying defendant's motion to dismiss on that basis without prejudice). Having declined to dismiss or transfer this action on the basis of the General Terms, the Court turns to whether the general transfer inquiry set forth in 28 U.S.C. § 1404 supports Defendant's request to transfer this action.

**C. An Evaluation of the § 1404 Considerations Does Not Warrant the Transfer of this Action**

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In so considering, the Court of Appeals has directed courts to consider, in addition to the three enumerated factors in § 1404(a), "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995) (internal quotations and citations omitted). In evaluating the propriety of transfer, courts have therefore relied upon "a wide range of public and private interests[.]" Yocham v. Novartis Pharm. Corp., 565 F. Supp. 2d 554, 557 (D.N.J. 2008).

Specifically, the private interests that courts should consider are:

> plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses- but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

Jumara, 55 F.3d at 879 (citations omitted). Among the public interests that courts should consider are:

> the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

Id. at 879-80 (citations omitted). "It is well-settled that the [heavy] burden on a § 1404(a) motion must be borne by the party seeking to transfer the case[.]'" Yocham, 565 F. Supp. 2d at 557 (citation omitted); see also Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970), cert. denied, 401 U.S. 910 (1971). Consequently, the plaintiff's "choice of forum will not be disturbed unless the balance of interest tilts strongly in favor of a transfer." Reed v. Weeks Marine, Inc., 166 F. Supp. 2d 1052, 1057 (E.D. Pa. 2001) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09 (1947)).

Here, the Court need not belabor the § 1404 analysis because the private and public interest considerations plainly

militate against transfer.[4]  While not afforded dispositive weight in connection with the § 1404 inquiry, it is black-letter law that "the plaintiff's choice of venue should not be lightly disturbed." Jumara, 55 F.3d at 879 (citation omitted); see also Knierim v. Siemens Corp., No. 06-4935, 2008 WL 906244, *20 (D.N.J. Mar. 31, 2008); Yang v. Odom, 409 F. Supp. 2d 599, 604 (D.N.J. 2006); Sandvik, Inc. v. Continental Ins. Co., 724 F. Supp. 303, 307 (D.N.J. 1989).  Indeed, in light of the "paramount consideration" accorded to a plaintiff's choice of venue, Shutte, 431 F.2d at 25, courts in this district have recognized that the plaintiff's choice of forum should prevail, "[u]nless the balance of inconvenience of the parties" strongly favors the defendant. Clark v. Burger King Corp., 255 F. Supp. 2d 334, 338 (D.N.J. 2003) (citing Shutte, 431 F.2d at 25); see also Sandvik, 724 F. Supp. at 307 (noting that "[t]his requires something more than a mere preponderance of the evidence in favor of transfer") (internal quotations and citation omitted). Defendant has not met this burden in this instance.

Nor has Defendant demonstrated that the remaining private interest considerations tip "strongly" in favor of transfer. Clark, 255 F. Supp. 2d at 338.  Rather, Plaintiff's Complaint

---

[4] Because, as stated above, the Court cannot at this time determine the enforceable nature of the forum selection clause relied upon by Defendants, the Court will not ignore the private interest considerations in disposing of Defendant's request to transfer this action.

plainly reflects that the State of New Jersey forms the heart of this litigation. (See generally Compl.) Indeed, New Jersey constitutes at this time the most privately convenient forum for this litigation, particularly because it is the forum state of all of the acts and physical property implicated in this action. In addition, most, if not all, of the witnesses relevant to the subject matter of this action—namely, Berkowitz employees— presumably reside at or near Berkowitz's Pedricktown, New Jersey facility and offices. The State of Ohio, by contrast, has no appreciable connection to the facts at issue in this case.

Moreover, although certain public interest considerations could conceivably tip in Defendant's favor, such considerations do not sufficiently tilt the scales to meet the heavy burden necessary to disturb Plaintiff's choice of forum. First, even assuming arguendo that Ohio law governs Plaintiff's claims, Defendant's position that this factor proves determinative is spurious. Notably, while the "familiarity of the trial judge with the applicable state law," see Jumara, 55 F.3d at 880, the inevitable choice-of-law analysis in this action will require either this Court or the Ohio court to determine whether the two states' laws actually conflict. See Lebegern v. Forman, 471 F.3d 424, 428 (3d Cir. 2006) (court undertaking choice-of-law analysis must examine both jurisdictions' laws to determine whether an "actual conflict" exists). Consequently, even

assuming that Ohio law will ultimately govern the viability of Plaintiff's claims, in so determining, a court will be called upon to examine the laws of both states.  See id.  Indeed, federal district courts routinely interpret, without issue, the laws of foreign jurisdictions, and Defendant has proffered insufficient cause at this time to transfer this inquiry to Ohio.  Nor does the Court find that any relative court congestion conclusively favors transfer.  Rather, although a consideration in a § 1404(a) motion, the Court finds the "'relative congestion of the respective courts' dockets'" of minimal importance in the overall transfer inquiry.[5]  Yocham, 565 F. Supp. 2d at 560 (quoting Clark, 255 F. Supp. 2d at 338 (citing cases for the proposition that "calendar congestion" does not constitute "a factor of great importance" in connection with a transfer motion)).  Lastly, because this action concerns tortious conduct that allegedly occurred in this State, New

---

[5] There is a slight disparity between the median time to disposition of a civil case by trial in the Northern District of Ohio (25.9 months) and the median time to disposition by trial in this District (36.8 months). See Table C-5, Administrative Office of the United States Courts, Statistical Tables for the Federal Judiciary, available at http://www.uscourts.gov/uscourts/Statistics/JudicialBusiness/2013/appendices/C05Sep13.pdf.  Since relatively few cases are resolved by trial in either district, however, the more relevant measure of court congestion is the median time to disposition for all cases, not just trials.  The median time to disposition for all cases in the District of New Jersey for the year ending September 30, 2013 is only 6.2 months, and the same interval for the Northern District of Ohio is 8.8 months.  Table C-5, id.  Thus, it cannot be said that disposition is likely to be faster if the case is docketed in the Northern District of Ohio.

Jersey possesses a significant public policy interest in resolving this dispute.  See Demodulation, Inc., 2011 WL 6756069, at *4; Springfield, 2011 WL 2600739, at *3.

Consequently, the private and public interests weigh, on balance, heavily against transferring this litigation to the Northern District of Ohio, and the Court accordingly denies Defendant's request to transfer.

## V. CONCLUSION

In sum, the Court will deny Defendant's motion to transfer and alternatively to dismiss in its entirety without prejudice to Defendant's right to renew upon conclusion of pretrial factual discovery.  The accompanying Order will be entered.


 **November 21, 2014**             **s/ Jerome B. Simandle**
Date                                JEROME B. SIMANDLE
                                    Chief U.S. District Judge